(No. 14809.—Reversed and remanded.)

THE NATIONAL MALLEABLE CASTINGS COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*— (TEKLA PALACZ, Admx. Defendant in Error.)

*Opinion filed December 19, 1922.*

1. WORKMEN'S COMPENSATION—*when evidence shows that disease was result of an injury.* Where it appears from the evidence that an employee received an injury to his side, which gradually became worse after he had worked a few days, and that he contracted pneumonia, which resulted in permanent empyema, it is a reasonable inference that the empyema resulted from the injury, where there is expert testimony that trauma is a possible although not the most usual cause of empyema.

2. SAME—*when the cause need not be remanded on account of death of claimant.* Where an employee contracts pneumonia and the disease results in a condition of empyema causing death more than a year after the accident and after his proceeding for compensation has been taken to the circuit court, the court need not remand the cause to the Industrial Commission to determine whether his death resulted from the accident, as the record, having been made in the employee's lifetime, is not affected by his death.

3. SAME—*when award for medical services cannot be sustained.* Where the employer furnished no medical or hospital services and

there is no evidence as to the value of the medical, surgical and hospital services procured by the employee or others, an award of $200 for such services cannot be sustained, but on remandment evidence may be introduced showing the extent and value of the medical and surgical services.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. FRANK JOHNSTON, JR., Judge, presiding.

BUTLER, LAMB, FOSTER & POPE, (BEVERLY V. VEDDER, of counsel,) for plaintiff in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

A writ of error was allowed on the petition of the National Malleable Castings Company to review a judgment of the circuit court of Cook county which modified an award made by the Industrial Commission in favor of Albert Palacz, by reducing the time for which compensation was payable from 347 weeks to 67 weeks, and confirming the award as corrected.

The plaintiff in error contends that the evidence fails to show that there was an accident, that notice was given to the employer within thirty days, that the accident claimed to have occurred caused the empyema complained of, that the empyema resulted in permanent disability, or that there was evidence to support the award of $200 for medical and surgical services, which was included in the award.

The accident was described in the application as follows: "On March 27, 1920, struck by a pile of falling boards. On April 3, 1920, excited injury of March 27, 1920, in handling a heavy mold." An arbitrator found the applicant not entitled to recover. Upon a review, in which additional evidence was heard, the commission awarded compensation for 346 weeks at $11.07 a week and for one week at $6.58, "for the reason that the accidental injury resulted in total incapacity for work," and $200 for necessary medical and surgical services, which were not rendered by the employer.

The employer petitioned for a rehearing upon the grounds, that John Davis, a witness who testified on the hearing before the commission, had testified falsely, and that additional evidence had been discovered.

The newly discovered evidence was that of Dr. Joseph W. Beaudette, who attended the claimant from April 3 to April 11, 1920. A sufficient reason was shown for the failure to produce his testimony on the hearing and his affidavit was filed, showing that he treated Palacz on April 3, 4, 5, 7, 9 and 11, 1920, made a physical examination of his chest, which disclosed no indication of any external injury on either side and no signs to indicate that he had sustained any injury, and that the claimant was then suffering from a combination of pneumonia and empyema. Davis had testified through an interpreter before the commission that he had seen the boards fall and strike Palacz. His affidavit was filed stating that he did not see the accident. He also testified through an interpreter on the hearing of the petition for rehearing. His testimony, though somewhat confused, was that he did not actually see the boards fall, but was passing by, wheeling boards to the core room, and had his back toward Palacz when the boards fell. He went to Palacz, who was stooping down, and asked what was the matter. Palacz told him he was hurt. Davis did not see the boards fall but they all fell; they were there; they were scattered. The testimony of Dr. Beaudette would not have been conclusive, for one of the witnesses, Mary Scharvat, who was a midwife and a neighbor of Palacz, testified that in the last part of March, 1920, Palacz's wife called her in and as a neighborly act she then and afterward treated him with cold compresses and bandages a number of times, and that in her treatments she discovered a blue mark, which was swollen. She treated him almost every day for a week and after that the trouble went into his chest, and he became so much worse that the doctor was called. The deposition of the doctor, whose first call was on April 3, a week after

the accident is alleged to have occurred, did not, therefore, contradict this witness. The petition for rehearing was properly denied.

In the circuit court the plaintiff in error filed a motion to remand the cause to the Industrial Commission for a rehearing, supporting the motion by the same showing that was made in support of the petition for rehearing. This motion was also properly denied.

The plaintiff in error contends that there is no evidence to justify a finding of an accident. Palacz testified that on March 27, 1920, he was working as a molder. He turned around to get a flask, when some boards piled near the flask on a pile of sand tipped and fell, striking him in the side. He was frightened and weakened. He testified that this occurred on Friday; that he continued to work that day, though in pain, and the half day during which the plant was operated on Saturday, and until Saturday of the following week, April 3, when the doctor was called. The testimony of John Davis and Mary Scharvat, already referred to, corroborates this testimony. The plaintiff in error contends that this evidence is overcome by other evidence, which is mostly of a negative character. Palacz's wife testified and made no mention of seeing the blue, swollen spot, though she put cold towels and other things on that place from day to day. She testified through an interpreter. Albert Swientalski was on the same job with Palacz but did not see him hurt, nor did Palacz tell him that he had been hurt, though he complained of his side hurting. Swientalski did not know whether he was with Palacz on March 27, 1920, and may have been in the yard or somewhere else if he was with Palacz on that day. March 27 was Saturday, and Palacz testified he was injured on Friday, but this is not important. He made it clearly appear that he was injured on Friday and worked for a week afterward until the doctor was called, on April 3. Dr. Beaudette's statement in his affidavit that he saw no blue or swollen spot has already

been mentioned and is not inconsistent with the other testimony. The conclusion that the accident occurred as claimed by Palacz is in accordance with the evidence. Palacz further testified that on April 3, after lunch, a heat was run off and he took hold of the machine and lifted it, "and just then something hurt me in the same side and it threw me down and I was unable to work. I had ten more molds to finish, and I went over to Joe Sterna and asked him to help me out to finish the molds, and he said he was also crippled in the same side and couldn't do it." Palacz then proceeded to do his work the best he could.

It is also insisted that the evidence does not show that notice of the accident was given to the employer within thirty days after the accident. Palacz testified that he notified Joe Sterna, the foreman, the day of the accident, and Sterna denied it. Mrs. Palacz testified that on the next pay-day she went to the plant for her husband's pay and told them he was very sick,—needed a doctor,—and asked for one, and the next pay-day she went again and told them her husband was very sick; that he needed a doctor and that they should send a doctor; that he belonged to the insurance and they should take care of this. She told them he was injured or hurt in the side, but she couldn't give them the particulars how he was hurt. He was struck on the side and was injured on the side. She talked with Vanderpool. Vanderpool testified that this was on April 12, and she said her husband was sick but that he had not met with an accident. Arthur O'Leary testified that on April 12 she came to him and he talked to her through an interpreter, and she said her husband was sick and had not been hurt. O'Leary referred her to Vanderpool, and Vanderpool referred her to the insurance company, which denied liability. Mrs. Palacz came again five or six days later and liability was again denied, and Vanderpool referred her to the United Charities. This time she was accompanied by her son, who was eleven years old and able to speak and under-

stand English. The boy testified that he then told Vander-
pool that his father had been hurt at the plant while he was
employed there and they wanted money. They were sent
to the United Charities. Vanderpool and O'Leary denied
being given any information of the injury. It cannot be
said that the evidence did not sustain the finding that no-
tice was given.

It is contended that there is no evidence that the alleged
injury caused the disease from which Palacz later suffered.
The evidence shows that Palacz was injured on Friday,
March 26; that he was continually suffering after that time;
that he was treated at home by the application of cold com-
presses and bandages; that he became constantly worse, and
on April 3 Dr. Beaudette was called. His deposition shows
that Palacz was suffering from a combination of pneumonia
and empyema. Dr. James V. Russell was called on April 20
and found Palacz suffering from empyema, which is a col-
lection of pus in the pleural cavity. Palacz was taken to a
hospital. The doctor made a re-section of the seventh rib
at the posterior axillary line and drainage was established.
This doctor testified that there is a condition known as trau-
matic pleural pneumonia, but empyema is not necessarily the
result of a blow, and the doctor could not tell what caused
the condition in this case and got no history of an accident
in connection with the case. He had no interpreter and it
was very hard to get anything out of Palacz and his wife.
Dr. Nathaniel H. Adams testified that he examined Palacz
on September 11, 1920, and found that a portion of the
seventh rib had been removed and a great deal of pus was
coming from the opening, the chest was collapsed, there was
a great deal of dullness in the lower part of the right lung
and a marked rubbing between the pleural surfaces. His
temperature was above 100 and his pulse 115. He was still
suffering from empyema. The doctor testified:

Q. "Doctor, would a blow in the side which is of suffi-
cient violence to weaken him at the time and to cause a dis-

coloration of the skin to appear about bedtime of the same day,—could such a blow result in the condition known as empyema?

A. "Yes, but indirectly. First there is a pleurisy or pleural pneumonia. An empyema is the result of that. Empyema is an accident in the course of pleural pneumonia or pleurisy or pneumonia alone.

The arbitrator: "What other causes are there for empyema?

A. "An empyema is caused by any germ getting into the pleural cavity, and if it results from an accident, there is a blow sufficient to retard the circulation in the pleural cavity or to set up an inflammatory discharge, and that turns to pus. Empyema is simply a collection of pus in the pleural cavity.

The arbitrator: "There are other causes—other than trauma?

A. "Yes. Trauma is not the most usual cause. The most usual cause is catching cold.

The arbitrator: "And do you differentiate as to the different causes?

A. "You cannot differentiate except from the history of the case."

Palacz's condition did not improve prior to the hearing on March 10, 1921. From the evidence it appears that the injury to his side which he received immediately weakened him; that he suffered much pain and his condition did not respond to home treatment; that the doctor, when called, found him suffering from a combination of pneumonia and empyema; that after the pneumonia disappeared the empyema remained and Palacz was sick and totally disabled, and that one of the possible causes, though not the usual cause, of empyema is an external injury. The cause of the empyema can only be determined from the history of the case. In this case, from the history it is a reasonable inference that empyema resulted from the injury.

After the cause was taken to the circuit court Palacz died on July 18, 1921, and his widow demanded compensation of the plaintiff in error on account of his death. The court, upon consideration of the record, amended the decision of the commission by striking out the figures and word "347 weeks" and inserted in lieu thereof "67 weeks," and confirmed the award as amended, substituting Tekla Palacz, the administratrix, instead of Albert Palacz. The record shows that Albert Palacz left a will naming Tekla Palacz as executrix, and that letters testamentary were issued to her. The plaintiff in error insists that the death of Palacz and the demand of his widow for compensation require the circuit court to remand the cause to the Industrial Commission, for the reason that the death made necessary a further hearing in order to determine whether or not the accident resulted in the death. The death of Palacz was no reason for remanding the cause. The record was made in his lifetime and is not affected by his death, whatever effect his death may have had upon the payments afterward accruing.

It is suggested that the court should not have modified the award by reducing the number of weekly payments from 347 to 67. This was no doubt done because it was supposed that the death of the beneficiary had terminated the right to the weekly payments afterward accruing; but whether it was right or wrong, the plaintiff in error cannot complain of it because the action was in its favor.

Complaint is made of the award of $200 for medical and surgical services which were not rendered. The plaintiff in error furnished no medical or surgical attendance or hospital care. Dr. Beaudette treated Palacz nine times. On April 20 Dr. Russell was called, and Palacz was taken to the hospital on the 28th and the operation was performed on the 29th. There is no evidence of the value of these services and no evidence of what other treatment, if any,

Palacz received. For lack of such evidence the award of $200 for such services cannot be sustained.

The judgment will be reversed and the cause remanded to the circuit court, with directions to remand to the Industrial Commission to hear evidence as to the extent and value of the medical and surgical services, if evidence be offered, and to modify the award in this particular as the evidence may require.

*Reversed and remanded, with directions.*